**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

v.

MICHAEL FREDERICK STARYK, individually and doing business as MAGESTIC WORLD WIDE FINANCE (a/k/a MAGESTIC WW SOLUTIONS, a/k/a/ MAGESTIC WORLD WIDE SOLUTIONS),

Defendant,

YVONNE STEPHANIE SOLERTI-COTO, and GLOBAL FINANCIAL INSTITUTION LLC,

Relief Defendants.

**CIVIL ACTION NO: 24-CV-1561**

**Complaint for Injunctive and Other Equitable Relief and Civil Monetary Penalties Under the Commodity Exchange Act.**

**JURY TRIAL DEMANDED**

## I. SUMMARY

1. From at least 2021 through at least 2022 (the "Relevant Period"), Defendant Michael Frederick Staryk ("Staryk"), individually and doing business as Magestic World Wide Finance (a/k/a Magestic WW Solutions and a/k/a Magestic World Wide Solutions) ("Magestic World Wide"), and others, engaged in a deceptive scheme in which they fraudulently solicited and obtained retail client funds which were then misappropriated based on false claims of past performance and false promises of future profitable trading in commodity option transactions that were options on commodity futures contracts.

2. As part of the scheme, Staryk and others wrongfully obtained at least approximately $600,000 from at least 26 clients in the United States through false or misleading

material representations, pretenses, and/or promises to their clients, including concealment of information from clients. In truth, Staryk and others did not trade clients' funds in options on commodity futures contracts listed on U.S. designated contract markets, as promised. In truth, the client funds were deceitfully obtained and misappropriated.

3. As part of the scheme, without registering with the Commission, Staryk, individually and doing business as Magestic World Wide, directly and through others, for compensation or profit, engaged in the business of advising clients and prospective clients as to the value and advisability of trading in products such as options on commodity futures contracts, including options on crude oil futures, product symbol CL, traded on the New York Mercantile Exchange (NYMEX), and options on gold futures, product symbol GC, listed on the Commodity Exchange (COMEX), both Designated Contract Markets.

4. Staryk, directly and through others, also falsely and misleadingly represented to clients that client funds would be controlled by U.S. or U.K. businesses, and concealed from clients that their funds would be moved from accounts at U.S. banks in the United States under the control of Relief Defendant Yvonne Stephanie Solerti-Coto ("Coto") and in the name of Relief Defendant Global Financial Institution LLC ("Global Financial") to banks outside the United States, including banks in Costa Rica. Staryk and others also provided clients with access to a website that provided fictitious account statements falsely purporting to show client funds' trades in options on commodity futures listed on Designated Contract Markets in the United States.

5. Staryk and others willfully, or with reckless disregard for the truth thereof, concealed material information and failed to disclose to clients that: (1) in truth, clients' funds were not used to trade options on commodity futures contracts, as promised; (2) in truth, there

were no profits from trading; (3) in truth, client funds were misappropriated and sent to companies and individuals at their accounts in Costa Rican banks in Costa Rica and to companies and individuals at their accounts in U.S. banks in the United States; and (4) in truth, on the rare occasion that Staryk and others conveyed any funds at all back to a client, Staryk and others did so using other clients' funds in the manner of a Ponzi scheme.

6. In addition, Staryk misleadingly omitted from solicitations to clients that Staryk had a history of fraud involving products such as options on commodity futures contracts.

7. Staryk omitted and concealed from clients, for example, that the Commission had issued an order in 2004, *In re Michael F. Staryk*, CFTC No. 95-5, 2004 WL 1657544, (July 23, 2004 ("2004 Order"), finding that Staryk had engaged in fraud involving options on commodity futures contracts, revoking Staryk's registration, permanently banning Staryk from trading, and imposing a cease-and-desist order and a civil monetary penalty ("CMP").

8. On October 24, 2022, Staryk pled guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371, 18 U.S.C. § 1343, in relation to this scheme.

9. In sum, Staryk and others never traded on behalf of their clients as promised, and instead the funds were misappropriated for his own use and for use by others. Only a small fraction of clients' investments was returned, using other client funds in the manner of a Ponzi scheme.

10. Staryk and others, in coordination with Relief Defendant Coto, solicited and directed clients to wire funds into accounts in U.S. banks in the name of Relief Defendant Global Financial ("Global Financial Bank Accounts") and under Relief Defendant Coto's control, which were then misappropriated.

11. Relief Defendants Coto and Global Financial have were not entitled to the clients' funds and did not provide any services to clients.

12. By this conduct, and the conduct further described herein, Staryk, individually and doing business as Magestic World Wide, directly and indirectly, violated Sections 4c(b) and 4*o*(1)(A) and (B) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6c(b), 6*o*(1)(A), (B), and Commission Regulation ("Regulation") 33.10, 17 C.F.R. § 33.10 (2024).

13. By this conduct, and the conduct further described herein, Staryk, individually and doing business as Magestic World Wide, violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1), and the Commission's 1998 and 2004 Orders.

14. Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission brings this action to enjoin Staryk's unlawful acts and practices and to compel his compliance with the Act and rules, regulations and orders thereunder. In addition, the Commission seeks civil monetary penalties, and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post- judgment interest, and such other and further relief as the Court may deem necessary or appropriate.

15. Unless restrained and enjoined by this Court, Staryk will likely continue to engage in acts and practices alleged in this Complaint and similar acts and practices, as described below.

## II. JURISDICTION AND VENUE

16. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a),

authorizes the Commission to seek injunctive relief or to enforce compliance with the Act, or any rule, regulation, or order thereunder from a proper U.S District Court whenever it shall appear to the Commission that a person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder.

17. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) because Defendant Staryk and Relief Defendants Coto and Global Financial reside in this District, transact or transacted business in this District, or certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur within this District.

## III. PARTIES

18. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the responsibility for enforcing the provisions of the Act, 7 U.S.C. §§ 1-26, and the Regulations promulgated thereunder, 17 C.F.R. Pts. 1-190 (2024).

19. Defendant **Michael Frederick Staryk** is a resident of Sumterville, Florida.

20. During the Relevant Period, Staryk did business as Magestic World Wide Finance (also known as Magestic WW Solutions or Magestic World Wide Solutions) ("Magestic World Wide"). Magestic World Wide purported to do business and have places of business in Connecticut and the United Kingdom. Magestic World Wide has never been registered with the Commission.

21. From 1990 until 1998, Staryk was registered as an Associated Person ("AP") of various registrants with the Commission. On February 7, 1995, the Commission charged Staryk

with defrauding retail customers involving options on commodity futures contracts. After various proceedings, on December 4, 1998, an administrative law judge issued an order that, among other things, found that Staryk had engaged in fraud, imposed a CMP, and ordered Staryk to cease and desist from violating Section 4c(b) of the Act, 7 U.S.C. §6c(b), and all Regulations promulgated thereunder. In 2004, the Commission issued an order affirming in relevant part the 1998 Order, including the findings of fraud and the cease-and-desist order.

22. Relief Defendant **Yvonne Stephanie Solerti-Coto** is a resident of Connecticut. During the Relevant Period, Coto was the sole member, managing member, and registered agent of Global Financial Institution LLC, and was signatory on bank accounts in the name of Global Financial Institution LLC. Coto has never been registered with the Commission.

23. Relief Defendant **Global Financial Institution LLC** is a Connecticut Limited Liability Company formed on September 27, 2021. According to its company filings in Connecticut, Global Financial had places of business in Wilton, Greenwich, and Norwalk, Connecticut. Global Financial has never been registered with the Commission.

## IV. FACTS

### A. The Scheme

24. During the Relevant Period, Staryk and others acting pursuant to Staryk's instructions and managed by Staryk, by phone and through a website, emails, and written promotional material, solicited and obtained funds from at least 26 retail clients in the United States to open accounts at Magestic World Wide by conveying funds to the Global Financial Bank Accounts, for the purported purpose of trading options on commodity futures contracts in the U.S. and U.K. markets.

***Solicitations***

25. During the Relevant Period, Staryk, and others at his direction, typically "cold called" prospective clients.

26. As part of these solicitations, Staryk and others at his direction typically made a variety of representations to prospective clients to induce them to invest.

27. For example, Staryk and purported traders at his direction, including by email and telephone, represented to prospective and actual clients that they were experienced traders who traded profitably in options on commodity futures contracts and worked for Magestic World Wide.

28. Staryk and purported traders at his direction represented to prospective clients that Magestic World Wide was located in Connecticut and the United Kingdom.

29. Staryk or purported traders at his direction told prospective clients that they would open, advise, manage, and/or trade products in options on commodity futures contracts in individual accounts for the prospective clients.

30. During the Relevant Period, typically, Staryk and others at his direction solicited a prospective client to open an account to trade options on commodity futures contracts, such as options on oil commodity futures contracts, product symbol CL, listed on the NYMEX, or on a gold commodity futures contract, product symbol GC, listed on the COMEX, each a Designated Contract Market.

31. For example, Staryk, using an alias, contacted a client ("Client 1). Staryk told Client 1 that he would advise, manage, and trade Client 1's trading account. In or around June 2022, based on Staryk's representations, Client 1 decided to make two investments in options on oil commodity futures contracts, product symbol CL, listed on the NYMEX, amounting to

$15,240. Based on Staryk's representations, Client 1 sent those funds to one of the Global Financial Bank Accounts. Those funds were misappropriated.

32. During the Relevant Period, at times, Staryk and purported traders at his direction represented to prospective clients that the clients' investments would grow in a short period of time. For example, on or about June 2022, a purported trader acting under Staryk's direction promised another client ("Client 2") that Client 2 would make double or triple his investment in three months. Based on those representations, Client 2 decided to make two investments in options on oil futures contracts totaling $9,900 and transferred those funds to one of the Global Financial Bank Accounts. Those funds were misappropriated.

33. Similarly, in or around June 2022, as part of the scheme, a purported trader under Staryk's direction cold called, solicited, and advised a client ("Client 3") to trade GC. Based on those representations, Client 3 decided to make investments in options on gold futures contracts, GC, totaling $2,000 and transferred those funds to one of the Global Financial Bank Accounts. Those funds were misappropriated.

34. During the Relevant Period, Staryk oversaw purported traders' solicitations of clients. For example, and throughout the scheme, Staryk advised purported traders what options on commodity futures contracts to solicit from clients, created and advised on the content of traders' communications with clients, including emails and a website, and answered client inquiries purportedly as an "industry expert."

35. During the Relevant Period, Staryk maintained records for client solicitations, client contact information, and the purported trades by the purported traders acting under his direction.

36. After clients made their first investments, Staryk or others at his direction continued to solicit and advise clients to make additional investments and to enter into additional trades in different options on commodity futures contracts. Staryk typically presented himself to a client as a senior and more successful trader than the purported traders who initially cold called, solicited, and purportedly traded for clients, with trading experience in options on commodity futures contracts, and continued the solicitations and advice.

37. Staryk then solicited and convinced clients to make additional investments in options on commodity futures contracts, such as options on oil futures.

***Opening Client Trading Accounts***

38. During the Relevant Period, once a prospective client agreed to open an individual trading account with Magestic World Wide, the purported trader, or someone acting on that person's behalf, obtained background information from the client. Information included the clients' name, date of birth, phone, email, investment experience, occupation, annual income, the purported broker assigned to the client, and whether the client was given and had access to Magestic World Wide's website. Shortly after, the trader or someone acting on the trader's behalf would notify the new client by phone or email that the client's trading account was ready to receive funds.

39. For example, in or around June 2022, Client 2 received an email from Magestic World Wide's "New Account Department" stating that "[t]he compliance department reviewed your application and they approved it. Your account has been processed and it is ready to receive funds. If you have any questions, you may contact your advisor, at any time with your account number." The advisor was the purported trader who solicited the client.

40. Staryk or others acting under his direction, by phone or email, then instructed Client 2 to send funds by wire or check to one of the Global Financial Bank Accounts, which Relief Defendant Coto controlled, to fund the client's new trading account.

41. After Client 2's funds were received at one of the Global Financial Bank Accounts, Staryk or others at his direction called or contacted Client 2 using a Magestic World Wide e-mail address and provided Client 2 with an "account number," a username, and/or a password purportedly to access Client 2's trading account statements online at the Magestic World Wide website "at any time." The email included Magestic World Wide's website address. Using this information, Client 2 was able to access what purported to be Client 2's trading statements online at the Magestic World Wide's website.

42. For example, in or around June 2022, after providing funds to one of the Global Financial Bank Accounts, Client 2 received an email stating, "We are providing you with your username and password so you can check your account online, anytime, anywhere."

***Website and Account Records***

43. During the Relevant Period, after providing their funds to Global Financial, Magestic World Wide clients were provided access to their purported trading statements on the Magestic World Wide website.

44. Clients were also provided written materials styled as "Company Report" ("Report") dated August 2021.

45. The website and the Report made substantively similar representations.

46. The website and the Report represented in sum and substance that Magestic World Wide was an "investment manager" with "a diversified portfolio of investments" that "specializ[ed] in the futures options markets," including "commodities and energy."

47. The website and the Report represented in sum and substance that Magestic World Wide "managed" client investments "by a process of asset allocation and investment selection."

48. The Report provided an "Industry Fact Sheet" describing the "Magestic Strategy," which called for "an investor with a time horizon of more than 20 years and minimal tolerance for risk." The Report also discussed the "Benefits of Investing," and shared Magestic World Wide's "Portfolio Performance." The Report, dated August 2021, claimed that Magestic World Wide's "defensive" investment portfolio had achieved annual returns of over 8% since its inception in May 2018.

49. The Magestic World Wide website purportedly provided clients with information about their trading, including trading statements.

50. That trading information included details of purported client account trades.

51. Clients also were provided information about their purported trading in the form of Transactions Summary, Active Purchases, Total Market Value, Deposits, and Earnings.

52. At times, clients were provided with trade information and confirmations through an app accessible on smartphones.

53. Based on the information that clients were provided, clients typically understood that their investments had increased in value. For example, in or around April 2022, Client 2 was falsely or misleadingly informed by a purported trader that the Client 2's investment had more than doubled in just a few months. In truth, Client 2's investment had not doubled. If fact, Client 2's investment was not traded in options on commodity futures, as promised, and Client 2's funds were misappropriated.

***Relief Defendants: Entities, Bank Accounts, and "Office" Used in the Scheme***

54. During the Relevant Period, in coordination with Staryk and others, Coto controlled the Global Financial Bank Accounts, including their creation and transfers of Magestic World Wide client funds that had been received into the Global Financial Bank Accounts to other accounts, including accounts in Costa Rica.

55. Staryk and purported traders instructed clients by phone and email to send their investments to the Global Financial Bank accounts.

56. In or around September 2021, Relief Defendant Coto organized Relief Defendant Global Financial in Connecticut.

57. Relief Defendant Coto identified herself in the organization document as Global Financial's member and registered agent for service of process. Around this time, Relief Defendant Coto also applied to the U.S. Internal Revenue Service ("IRS") for Global Financial's employer identification number ("EIN") using her home address.

58. During the Relevant Period, Relief Defendant Coto opened two business bank accounts for Relief Defendant Global Financial at a bank with operations in Connecticut ("Bank 1") (the "First Global Financial Bank 1 Account" and the "Second Global Financial Bank 1 Account"), and a third account for Global Financial at another bank with operations in Connecticut ("Bank 2") (the "Global Financial Bank 2 Account").

59. Relief Defendant Coto opened the First Global Financial Bank 1 Account and the Second Global Financial Bank Account 2 purportedly to carry out financial transactions, reserve, and clearinghouse activities. Relief Defendant Coto opened the Global Financial Bank Account 2 purportedly to conduct a "home design" business.

60. Relief Defendant Coto was signatory to the First Global Financial Bank 1 Account, the Second Global Financial Bank 1 Account, and the Global Financial Bank 2 Account.

61. In the Bank 1 account opening documents, Relief Defendant Coto identified herself as Relief Defendant Global Financial's principal and member and stated that she owned 100% of Relief Defendant Global Financial. In the Bank 2 account opening documents, Relief Defendant Coto identified herself as Relief Defendant Global Financial's managing member, provided her home address as Relief Defendant Global Financial's address, and stated that Relief Defendant Global Financial's business was "home based."

62. During the Relevant Period, the First Global Financial Bank 1 Account, the Second Global Financial Bank 1 Account, and the Global Financial Bank 2 Account, all of which were under Relief Defendant Coto's control, received wires and at times checks from Magestic World Wide clients who had been solicited by Staryk, or others at his direction, and who were providing the funds for the purpose of trading options on commodity futures contracts.

63. In or around early 2022, Relief Defendant Coto contacted a company that provided virtual office space to customers and set up a virtual office for Global. In or around May 2022, Coto signed an agreement for a new virtual office space for Relief Defendant Global Financial in Connecticut. In or around September 2022, Relief Defendant Coto requested that the U.S. Postal Service deliver mail for Relief Defendant Global Financial to this virtual office center in Connecticut.

64. Staryk and others at his direction, by phone and email, instructed Magestic World Wide clients to send funds to the Global Financial Bank Accounts at Bank 1 and Bank 2 in Connecticut, purportedly for the purpose of trading in options on commodity futures contracts.

Staryk and others at his direction also instructed Magestic World Wide clients to send checks to Relief Defendant Global Financial at Global Financial's virtual office address in Connecticut, purportedly for the purpose of trading in options on commodity futures contracts.

65. Relief Defendants Coto and Global Financial had no independent claim to clients' investments and provided no services to clients directly.

**B. <u>Staryk's Deception and Fraud</u>**

66. During the Relevant Period, Staryk's solicitations, purported account statements, and entities and bank accounts were rife with fraud and deceit.

67. During the Relevant Period, the client funds obtained through the fraud and deceit were misappropriated.

***Defendants' False or Misleading Solicitations***

68. During the Relevant Period, Staryk and others at his direction made numerous false and misleading representations and omissions in solicitations to prospective clients.

69. For example, Staryk represented to clients by phone that he was an experienced trader with Magestic World Wide. This was a false and misleading statement and omission. The representation that Magestic had a profitable track record of trading was also a false and misleading statement and omission. In truth, Magestic World Wide had no such track record. In truth, Magestic World Wide was merely a DBA for Staryk and was not registered with the relevant Connecticut or U.K. authorities. In truth, Staryk had a track record of fraud. In fact, the CFTC prohibited Staryk from trading options on commodity futures contracts.

70. The names Staryk and others at his direction used with clients and prospective clients were false or misleading.

71. During the Relevant Period, Staryk and others at his direction used aliases to conceal their true identities from clients and prospective clients in communications such as phone calls. Staryk, for instance, used at least three aliases in his communications with clients: Frederick Stock, Michael Hatkoff, and Michael Brieton. For example, in or around June 2022, Staryk used the alias "Michael Brieton" in his solicitations and purported trading for Client 1, among others. Staryk maintained records of which alias was used for a given client.

72. The representations that Staryk and others at his direction would trade options on futures contracts on behalf of the clients they solicited—e.g., Staryk's representation to Client 1 that he would trade options on oil futures for Client 1—were also false or misleading. In truth, Staryk and others acting at his direction did not trade client funds as promised. In truth, there was no trading, as promised. Instead, client funds were misappropriated, including by transfers from the Global Financial Bank Accounts, which Relief Defendant Coto controlled, to companies and individuals at their accounts in Costa Rican banks in Costa Rica where the funds were dissipated.

73. The representations to clients, made by Staryk and others under his direction, that Staryk and others worked for Magestic World Wide, a trading company with operations in Connecticut and the United Kingdom, were false and misleading. In truth, Magestic World Wide was not a trading company with operations in Connecticut and in the United Kingdom as described. Magestic World Wide was merely a fictitious name that Staryk used for the fraud.

74. The representations made by Staryk and purported traders acting at his direction that, as described above, they would open, advise, manage, and/or trade individual trading accounts for clients, as promised, were false or misleading. In truth, Staryk and others did not open, manage and/or traded individual accounts for clients, as promised.

75. The representations that Staryk and others would trade clients' investments in options on commodity futures contracts, such as options on gold or oil futures contracts listed on designated contract markets, were false or misleading. In truth, Staryk and others did not trade such products for clients, as promised, and the client funds were misappropriated.

76. The representations by Staryk, and others at his direction, that his clients' investments in options on commodity futures contracts would grow were false or misleading. In truth, Staryk and others did not trade client funds as promised, and instead the client funds were misappropriated.

77. Staryk's representations to clients and prospective clients concerning his track record as a successful trader were false or misleading. In truth, Staryk had been found liable for fraud related to options on commodity futures contracts, his registration had been revoked, he had received a permanent trading ban, he had been ordered to cease and desist his fraud, and he had been ordered to pay a CMP.

***Fake Trading Account Activity and Statements***

78. During the Relevant Period, Staryk and purported traders made false or misleading representations and omissions to clients concerning their account activity and account statements by telephone as well as through the Magestic World Wide website.

79. The Magestic World Wide website offered access to trading statements that purported to show Staryk and purported traders' trading in advised options on commodity futures contracts for clients.

80. In truth, the trading statements reflected on the Magestic World Wide website were false or misleading. There was no trading as described.

***Misappropriation of Customer Funds***

81. During the Relevant Period, instead of trading client funds as promised—for example, as described above, promises of profitably trading options on commodity futures contracts—the client funds were misappropriated. Relief Defendant Coto transferred most of the client funds from the Global Financial Bank Accounts to companies and individuals at their accounts in Costa Rican banks in Costa Rica. There, clients' funds were not used to trade options on commodity futures contracts, as promised. Also, while not trading clients' funds as promised, Staryk received and used the misappropriated client funds for his own benefit. Relief Defendant Coto kept, dissipated, or otherwise used for her own benefit the remainder of the client funds.

82. On the rare occasion a client received any funds back at all, it was a small amount and was made using other client funds in the manner of a Ponzi scheme. For example, in or around early 2022, one client ("Client 5") invested a total of $3,968 by two separate transfers into one of the Global Financial Bank Accounts. Client 5's funds were commingled with funds from other Magestic World Wide clients, were not used for trading options in commodity futures as promised, and were misappropriated. Ultimately, Client 5 received that amount back. The returned amount consisted of other clients' funds, in the manner of a Ponzi scheme.

83. During the Relevant Period Staryk's agreement with others in the scheme was that he would receive approximately 20% of those misappropriated funds for his own benefit.

84. During the Relevant Period, Relief Defendants Coto and Relief Defendant Global Financial received ill-gotten gains from the fraudulent conduct by Staryk and others. Relief Defendants Coto and Relief Defendant Global Financial had no legitimate claim to those funds

and did not provide any services to Magestic World Wide clients, as promised by Staryk and others.

85. During the Relevant Period, Relief Defendant Coto kept approximately 30% of Magestic World Wide client funds sent to Global Financial Bank Accounts.

***Ceasing Communications and Shutting Down the Website***

86. During the Relevant Period, when Magestic World Wide clients attempted to withdraw funds from their purported trading accounts, Staryk and others took various steps to conceal the fraud, deception, and misappropriation.

87. For example, in or around October 2022, a purported trader involved in the scheme told Client 2 that Client 2's investment and trades "just didn't work out." The purported trader then falsely and misleadingly told Client 2 that Client 2 could get funds back if Client 2 made additional investments. Client 2 refused to make additional investments and asked to withdraw the remaining balance in Client 2's account. Client 2 received a withdrawal form, completed it, and returned to Defendants, but never received the purported remaining balance.

88. In or about late 2022, Staryk and others ceased communications with Magestic World Wide clients.

89. In or around late 2022, the Magestic World Wide website was taken down.

**C. Staryk's History of Fraud**

90. Staryk had a history of fraud.

91. For example, from 1990 until 1998, Staryk was registered as an AP of various registrants with the Commission. On February 7, 1995, the Commission charged Staryk with defrauding retail customers involving options on commodity futures contracts, and thereafter

Staryk was found to have engaged in fraud involving options on commodity futures contracts, a finding upheld by the Commission in its 2004 Order.

**D. Staryk's Guilty Plea to the Charge of Conspiracy to Commit Wire Fraud**

92. On October 24, 2022, Staryk signed a plea agreement, which was filed with the Court on October 25, 2022, in the Northern District of Texas, Docket, 3:22-cr-00409-B. Staryk also signed a factual statement titled "Factual Resume" in support of the plea agreement (the "Resume"), which was also filed with the Court on October 25, 2022, in connection with the Scheme and the Prior Schemes. On that date, Staryk entered a plea of guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371, 18 U.S.C. § 1343, which encompassed both the plea agreement and the Resume.

93. In the Resume, which Staryk and his counsel signed, Staryk stipulated and agreed that he engaged in a scheme and artifice to defraud and to obtain money and property by means of materially false pretenses, representations, and promises, and through the concealment of material information from investors in a series of investment companies, including Global Financial and Magestic World Wide. Staryk further admitted that his role for each entity included, among other things, calling investor victims, soliciting investments, answering investor victim inquiries as the industry expert, advising co-conspirators what options to solicit, and accounting of investor victims' investments.

## V. STATUTORY AND REGULATORY VIOLATIONS

### COUNT I

**Violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) and Regulation 33.10, 17 C.F.R. § 33.10 (2024) (OPTIONS FRAUD)**

94. The allegations in the preceding paragraphs are re-alleged and incorporated herein

by reference.

95. 7 U.S.C. § 6c(b), in relevant part, prohibits offering, entering into, or confirming execution of, commodity options, such as the options on commodity futures contracts offered, entered into, or confirmed by Staryk and others in Designated Contract Markets in the United States, contrary to Commission rules, regulations, or orders.

96. 7 U.S.C. § 6c(b) provides:

> No person shall offer to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under this chapter which is of the character of, or is commonly known to the trade as, an “option”, “privilege”, “indemnity”, “bid”, “offer”, “put”, “call”, “advance guaranty”, or “decline guaranty”, contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe.

97. 17 C.F.R. § 33.2(b) provides that the “provisions of [Part 33] apply to commodity option transactions that are options on contracts of sale of a commodity for future delivery except for commodity option transactions that are options on contracts of sale of a commodity for future delivery conducted or executed on or subject to the rules of a foreign board of trade.”

98. 17 C.F.R. § 33.10 prohibits fraud and deceit in connection with offering to enter into, entry into, confirming execution of, or maintenance of commodity option transactions.

99. 17 C.F.R. § 33.10 provides:

> It shall be unlawful for any person directly or indirectly -- (a) To cheat or defraud or attempt to cheat or defraud any other person; (b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof; or (iii) To deceive or attempt to deceive any other person by any means whatsoever in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction.

100. Staryk, individually and doing business as Magestic World Wide, violated 7 U.S.C. § 6c(b) and 17 C.F.R. § 33.10 by, directly or indirectly, cheating or defrauding, or attempting to cheat or defraud other persons; making or causing to be made to any other person any false report or statement thereof, or causing to be entered for any person any false record thereof; and deceiving or attempting to deceive other persons in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction (such as the options on commodity futures contracts described herein).

101. Staryk, individually and doing business as Magestic World Wide, directly and through others, did so by, among other things: (i) falsely representing to clients that he and/or purported traders would use their discretion to trade clients' funds in options on commodity futures contracts; (ii) falsely promising clients profits; (iii) providing clients with access to false or misleading trading statements that reflected fictitious trading; (iv) concealing and failing to disclose to clients that their funds were not used, as promised, to trade options on commodity futures contracts; (v) concealing and failing to disclose that there were no profits from trading and/or that he and/or purported traders could not promise returns and/or profits; (vi) enabling the misappropriation of client funds and arranging with others to receive a portion of those misappropriated client funds, and concealing and failing to disclose to clients that their funds were misappropriated; (vii) falsely representing to clients that their investments were controlled by Magestic World Wide and Global Financial, U.S. based businesses, at their Global Financial Bank Accounts at U.S. banks in the United States; (viii) failing to disclose to clients that their funds were transferred from the Global Financial Bank Accounts to companies and individuals at their accounts in Costa Rican banks in Costa Rica; and (ix) failing to disclose to clients the

Commission's findings that he had previously defrauded clients, the substance and fact of the 1998 Order, and the substance and fact of the 2004 Order.

102. Staryk, individually and doing business as Magestic World Wide, directly and through others engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to phone, interstate wires for transfer of funds, a website, emails, and bank accounts (funds were sent to bank accounts in the United States and internationally).

103. Staryk, individually and doing business as Magestic World Wide, directly and through others, engaged in the acts and practices described above willfully or with reckless disregard for the truth.

104. Each act of fraudulent solicitation, misappropriation, omission, and false statement or report by Staryk, individually and doing business as Magestic World Wide, directly or indirectly, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of 4c(b) of the Act, 7 U.S.C. § 6c(b) and Regulation 33.10, 17 C.F.R. § 33.10 (2024).

**<u>COUNT II</u>**

**Violations of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (CTA FRAUD)**

105. The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

106. 7 U.S.C. § 6*o*(1), in part, makes it unlawful for a CTA:

> [B]y use of the mails or any other means or instrumentality of interstate commerce, directly or indirectly–(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction,

> practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

107. Staryk, individually and doing business as Magestic World Wide, directly and through others, for compensation or profit, engaged in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in products listed in 7 U.S.C. § 1a(12)(A)(i)(I-IV) such as commodity options, and thus acted as a CTA pursuant to Section 1a(12) of the Act, 7 U.S.C. § 1a(12).

108. Staryk, individually and doing business as Magestic World Wide, violated 7 U.S.C. § 6*o*(1)(A) and (B), in that, by use of the mails or any means or instrumentality of interstate commerce, while acting as a CTA, Staryk directly or indirectly employed a device, scheme, or artifice to defraud clients or prospective clients, or engaged in transactions, practices, or a course of business which operated as a fraud or deceit upon clients or prospective clients, directly and/or through officers, employees, or agents.

109. Staryk, individually and doing business as Magestic World Wide, did so directly and through others by, among other things: (i) falsely representing to clients, that he and/or purported traders would use their discretion to trade clients' funds in options on commodity futures contracts; (ii) falsely promising clients profits; (iii) providing clients with access to fake trading statements that reflected fictitious trading; (iv) concealing and failing to disclose to clients that their funds were not used, as promised, to trade options on commodity futures contracts; (v) concealing and failing to disclose that there were no profits from trading and/or that they could not promise returns and/or profits; (vi) enabling the misappropriation of client funds and arranging with others to receive a portion of those misappropriated client funds, and concealing and failing to disclose to clients that their funds were misappropriated; (vii) falsely representing to clients that their investments were controlled by Magestic World Wide and

Global Financial, U.S. based businesses, at their Global Financial Bank Accounts at U.S. banks in the United States; (viii) failing to disclose to clients that their funds were transferred from the Global Financial Bank Accounts to companies and individuals at their accounts in Costa Rican banks in Costa Rica; and (ix) failing to disclose to clients the Commission's findings that he had previously defrauded clients, the substance and fact of the 1998 Order, and the substance and fact of the 2004 Order.

110. Staryk, individually and doing business as Magestic World Wide, directly and through others, engaged in the acts and practices described above using instrumentalities of interstate commerce, including but not limited to phone, interstate wires for transfer of funds, a website, emails, bank accounts (funds were sent to bank accounts in the U.S. and internationally).

111. Staryk, individually and doing business as Magestic World Wide, directly and through others, engaged in the acts and practices described above willfully or with reckless disregard for the truth.

112. Each act of, while acting as a CTA, directly or indirectly, employing a device, scheme, or artifice to defraud clients or prospective clients, or engaging in transactions, practices, or a course of business which operated as a fraud or deceit upon clients or prospective clients, directly and/or through officers, employees, or agents, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B).

## COUNT III

**Violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1)**
**(FAILURE TO REGISTER AS A CTA)**

113. The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

114. 7 U.S.C. § 6m(1) provides in relevant part that "[i]t shall be unlawful for any commodity trading advisor . . . unless registered under this Act, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such commodity trading advisor . . . ."

115. 7 U.SC. § 1a(12) provides in relevant part:

> Except as otherwise provided in this paragraph, the term "commodity trading advisor" means any person who—
>
> (i) for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in—
>
> (I) any contract of sale of a commodity for future delivery, security futures product, or swap;
> (II) any agreement, contract, or transaction described in section 2(c)(2)(C)(i) of this title or section 2(c)(2)(D)(i) of this title[;]
> (III) any commodity option authorized under section 6c of this title; or
> (IV) any leverage transaction authorized under section 23 of this title . . . .

116. Staryk, individually and doing business as Magestic World Wide, directly and through others, for compensation or profit, engaged in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in products listed in 7 U.S.C. § 1a(12)(A)(i) such as commodity options, and thus acted as a CTA pursuant to Section 1a(12) of the Act, 7 U.S.C. § 1a(12).

117. Staryk, individually and doing business as Magestic World Wide, directly and through others, made use of the mails or any means of interstate commerce in connection with the business of a CTA, while failing to register with the Commission as a CTA, in violation of 7 U.S.C. § 6m(1).

## VI. RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and under the Court's own equitable powers, enter:

a) An order finding that Staryk violated Sections 4c(b) and 4*o*(1)(A) and (B) of the Act, 7 U.S.C. §§ 6c(b), 6*o*(1)(A), (B), and Regulation 33.10, 17 C.F.R. § 33.10 (2024);

b) An order finding that Staryk, individually and doing business as Magestic World Wide, violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1), and the 1998 Order and the 2004 Order;

c) An order of permanent injunction permanently restraining, enjoining, and prohibiting Staryk, and any other person or entity associated with Staryk, from engaging in conduct in violation of 7 U.S.C. §§ 6c(b), 6*o*(1)(A), (B), and Regulation 33.10, 17 C.F.R. § 33.10 (2024);

d) An order of permanent injunction permanently restraining, enjoining, and prohibiting Staryk, and any other person or entity associated with Staryk, from engaging in conduct in violation Section 4m(1) of the Act, 7 U.S.C. § 6m(1), and the 1998 Order and the 2004 Order;

e) An order of permanent injunction prohibiting Staryk, and any of his affiliates, agents, servants, employees, successors, assigns, attorneys, and persons in active concert or participation with Staryk, from directly or indirectly:

(i) trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a);

(ii) entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2024)) for Staryk's own account or for any account in which Staryk has a direct or indirect interest;

(iii) having any commodity interests traded on Staryk's behalf;

(iv) controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(v) soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(vi) applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2024);

(vii) acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2024)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9);

a) An order requiring Staryk, and any third-party transferee and/or successor thereof, to disgorge to any officer appointed or directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly

or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment and post-judgment interest;

b) An order directing Staryk and any successors thereof, to rescind, under such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between Staryk and any of the clients whose funds were received by Staryk as a result of the acts and practices that constituted violations of the Act, as described herein;

c) An order requiring Staryk, as well as Staryk's successors, to make full restitution, pursuant to such procedure as the Court may order, to every person or entity who sustained losses proximately caused by Staryk's violations (in the amount of such losses), as described herein, plus pre-judgment interest thereon from the date of such violations, plus post-judgment interest;

d) An order directing Staryk to pay a CMP, to be assessed by the Court, in an amount not more than the penalty prescribed by 7 U.S.C. § 13a-1(d)(1) as adjusted for inflation under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114–74, 129 Stat. 584 (2015), title VII, Section 701, *see* Commission Regulation 143.8, 17 C.F.R. § 143.8 (2024) for each violation of the Act, as described herein;

e) An order requiring Staryk to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2);

f) An order requiring Relief Defendant Coto and Relief Defendant Global Financial each to disgorge ill-gotten funds up to the amount each received from Staryk's and other's fraudulent conduct and misappropriation, or the value of those funds that Relief Defendant Coto and Relief Defendants Global Financial may have subsequently transferred to third parties; and

g) Such other and further relief as the Court deems proper.

Dated: September 27, 2024

Respectfully submitted,

*/s/ Xavier Romeu-Matta*

Xavier Romeu-Matta
Trial Attorney
Bar number: phv208251
xromeumatta@cftc.gov

Gates S. Hurand
Chief Trial Attorney
Bar number: phv208275
ghurand@cftc.gov

Manal Sultan
Deputy Director

Commodity Futures Trading Commission
290 Broadway, 6th Floor
New York, NY 10007
(646) 746-9700
646-746-9938 (fax)

*Attorneys for Plaintiff*
*Commodity Futures Trading Commission*